AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**RECEIVED**

# UNITED STATES DISTRICT COURT

for the

SEP 28 2021

NOEL L. HILLMAN
U.S. DISTRICT JUDGE

*John  Clark*
Petitioner

v.

Case No.

*(Supplied by Clerk of Court)*

RECEIVED
SEP 28 2021
AT 8:30  M
WILLIAM T. WALSH
CLERK

*Warden  Charles  Warren*
Respondent

*(name of warden or authorized person having custody of petitioner)*

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.  (a)  Your full name:  *John  Harold  Clark*
    (b)  Other names you have used:  *none*

2.  Place of confinement:
    (a)  Name of institution:  *Cumberland  County  Jail*
    (b)  Address:  *54  W.  Broad  St.*
    *Bridgeton  N.J.  08302*
    (c)  Your identification number:  *42592*

3.  Are you currently being held on orders by:
    ☐ Federal authorities    ☑ State authorities    ☐ Other - explain:

4.  Are you currently:
    ☑ A pretrial detainee (waiting for trial on criminal charges)
    ☐ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
    If you are currently serving a sentence, provide:
    (a)  Name and location of court that sentenced you:  *Cumberland  County*
    *Jail  Bridgeton  N.J. 08302*
    (b)  Docket number of criminal case:  *W.-2019-302-0613*
    (c)  Date of sentencing:
    ☐ Being held on an immigration charge
    ☐ Other *(explain)*:

Page 2 of 10

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.    What are you challenging in this petition:

☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☑ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☐ Other (explain): _____

_____

6.    Provide more information about the decision or action you are challenging:

(a) Name and location of the agency or court: Cumberland County Jail 54 W. Broad Street Bridgeton

(b) Docket number, case number, or opinion number: ✓ 1:20-CV-07907-NLH-KMW

(c) Decision or action you are challenging (for disciplinary proceedings, specify the penalties imposed): ↙ Inclosed United States Constitution: Fifth Amendment, See 1-69 United States Constitution: Eighth Amendment-See 1-78 N.J. Consitution - See ✓ 1-83 Inclosed

(d) Date of the decision or action: _____

## Your Earlier Challenges of the Decision or Action

7.    **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☐ Yes          ☑ No

(a)  If "Yes," provide:

(1) Name of the authority, agency, or court: _____

_____

(2) Date of filing: _____

(3) Docket number, case number, or opinion number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(b) If you answered "No," explain why you did not appeal: *There isn't a appeal process.*

8. **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☐ Yes                    ☑ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: _____

(2) Date of filing: _____

(3) Docket number, case number, or opinion number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

(b) If you answered "No," explain why you did not file a second appeal: *There isn't a appeal process*

9. **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes                    ☑ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: _____

(2) Date of filing: _____

(3) Docket number, case number, or opinion number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(b) If you answered "No," explain why you did not file a third appeal: *There isn't a appeal process.*

10.  **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes        ☑ No

If "Yes," answer the following:

(a)  Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes              ☑ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

(b)  Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes              ☑ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

    (4)  Result: _____

    (5)  Date of result: _____

    (6)  Issues raised: _____

_____

_____

_____

_____

_____

12.    **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes          ☑ No

If "Yes," provide:

(a)  Kind of petition, motion, or application: _____

(b)  Name of the authority, agency, or court: _____

_____

(c)  Date of filing: _____

(d)  Docket number, case number, or opinion number: _____

(e)  Result: _____

(f)  Date of result: _____

(g)  Issues raised: _____

_____

_____

_____

_____

_____

### Grounds for Your Challenge in This Petition

13.    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**GROUND ONE:** _United States Constitution-Fifth-Amendment- See paragraphs 1-69 Inclosed See attached complaint papers_

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(c)　　Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your
conviction or sentence: _____

_____ *N/A* _____

_____

_____

_____

_____

11.　**Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes　　　　　☑ No

If "Yes," provide:

(a)　　Date you were taken into immigration custody: _____

(b)　　Date of the removal or reinstatement order: _____

(c)　　Did you file an appeal with the Board of Immigration Appeals?

☐ Yes　　　　　☐ No

If "Yes," provide:

(1)  Date of filing: _____

(2)  Case number: _____

(3)  Result: _____

(4)  Date of result: _____

(5)  Issues raised: _____

_____

_____

_____

_____

(d)　　Did you appeal the decision to the United States Court of Appeals?

☐ Yes　　　　　☑ No

If "Yes," provide:

(1)  Name of court: _____

(2)  Date of filing: _____

(3)  Case number: _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

_See enclosed_

(b) Did you present Ground One in all appeals that were available to you?

☐ Yes        ☑ No

**GROUND TWO:** _United States Constitution - Eighth Amendment - See 1-78_
_See attached Complaint papers_

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

_See enclosed_

(b) Did you present Ground Two in all appeals that were available to you?

☐ Yes        ☑ No

**GROUND THREE:** _New Jersey Constitution Article 1., See 11-83 enclosed_
_See attached complaint papers_

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

_See enclosed_

(b) Did you present Ground Three in all appeals that were available to you?

☐ Yes        ☑ No

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** _____

_____

_____

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

_____

_____

_____

_____

_____

_____

(b) Did you present Ground Four in all appeals that were available to you?

☐ Yes          ☑ No

14. If there are any grounds that you did not present in all appeals that were available to you, explain why you did not: *There isn't any appeals available in my situation*

**Request for Relief**

15. State exactly what you want the court to do: *Release with out bail or on a ankle braclet. My charges are rediculous and I have suffered enough I have been in this Jail for 27 months, with this I would ask the Good Judge to dismiss these charges.*

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

Sept. 17, 2021

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 9-16-21

_John Clark_
Signature of Petitioner

_____
Signature of Attorney or other authorized person, if any

Plaintiffs Raymond L. Brown, John Clark, Desmond Rodgers, and Todd Ford, Jr. (collectively, "Plaintiffs") individually and on behalf of a class similarly situated detained people in the custody of the Cumberland County Department of Corrections ("CCDOC") in the Cumberland County Jail ("Cumberland Jail") bring this First Amended Complaint under 42 U.S.C. §§1983 and 1988 against Charles Warren, Deputy Warden of the Cumberland Jail and John Doe, the Acting Warden of the Cumberland Jail (collectively, "Defendants") for violations of their constitutionally protected rights under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I of the New Jersey Constitution. For substantially all times relevant, Richard Smith was the Warden of the Cumberland Jail, and engaged in all conduct, acts and omissions alleged herein as against the Defendants.

## I.    BACKGROUND

1.    Since the COVID-19 pandemic began almost one year ago, life in the United States and around the world has changed dramatically. The population of incarcerated people—such as those detained at Cumberland County Jail—are particularly susceptible because they are in close proximity, 24 hours a day, every day, without end.   The impact of exposure to COVID-19 varies from person to person, but the risk of permanent lung scarring and death is both recognized and real.  To avoid spreading the deadly virus, protective face masks are almost universally required indoors, frequent hand washing and use of hand sanitizers and cleaning products have become standard protocol, and schools and offices where social distancing is difficult or impossible have operated remotely.

2.    At the direction of medical and scientific experts, citizens and businesses have argued vociferously that these safety measures must be implemented in an effort to stop the spread of COVID-19 and save lives. But for those incarcerated, the ability to take these simple steps to

protect themselves and others is impossible. Inmates at the Cumberland Jail are by definition completely reliant upon the Warden and those managing the Jail.

3.    The inmates at Cumberland Jail desperately wish to protect themselves from the virus.  They seek but have been: (1) denied masks to protect from the spread of the virus, (2) refused cleaning materials or adequate cleaning services to prevent the spread of this highly transmissible virus, (3)  eating TV dinners and pizza rather than given proper nutrition, so their bodies are weakened from malnutrition—which means their bodies are less able to fight off infection, (4) subject to a lack of social distancing from infected inmates, (5) suffering unusual mental stress due to the constant threat of exposure, and, among other things, (6) denied testing for exposure to COVID-19 even they are an extremely vulnerable population.

4.    Because Defendants have not taken adequate measures to control the spread of the virus that causes COVID-19, an ongoing crisis at the Cumberland Jail continues to threaten the lives of the inmates, the health and safety staff (nurses and doctors), correctional officers, and other staff living and working at the Cumberland Jail.   Although they may be on opposite sides of the jail cell bars, COVID-19 does not discriminate and affects the entire community within the Cumberland County Jail.

5.    The majority of inmates housed at the Cumberland Jail are pre-trial detainees and presumed innocent.

6.    Defendants' failures not only endanger people incarcerated at Cumberland Jail but also the correctional officers, staff, local health care workers, family members, and the broader community. As has been widely reported in the press, Defendants' actions and inaction has created a public health crisis as COVID-19 has spread unchecked throughout the Cumberland Jail inmate population and correctional officers.

3

7. Since March 2020, the Cumberland Jail has numerous confirmed, publicly reported cases of COVID-19, including in December 2020, a reported outbreak of COVID-19 infecting fifty (50) inmates and eleven (11) correctional officers working inside Cumberland Jail.

8. Plaintiffs, individually and on behalf of the class of all inmates housed at Cumberland Jail, seek declaratory and injunctive relief, including:

A. the immediate appointment of an independent monitor to study health and safety conditions related to the existence, implementation and enforcement of policies and procedures to contain the spread of COVID-19 within the facility;

B. an immediate order requiring Defendants to provide COVID-19 testing for every inmate;

C. an immediate order requiring Defendants to provide each inmate with ready access to new and adequate personal protective equipment and hand sanitizer;

D. an immediate injunctive order requiring Defendants to clean and disinfect all areas of the facility and to provide inmates with adequate access to cleaning and disinfecting supplies;

E. that the Jail provide proper nutrition to the inmates;

F. to the greatest extent possible, that the Jail consider social distancing, particularly taking care to avoid the risk of infected patients spreading the virus to others within the community working or incarcerated at the Cumberland County Jail.

## II. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it arises under the Constitution and laws of the United States, specifically 42 U.S.C. §§1983 and 1988. Plaintiffs allege individually and on behalf of the class of inmates housed at

Cumberland Jail that Defendants have violated the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

13.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201-02, by Federal Rules of Civil Procedures 57 and 65 and by the inherent equitable powers of this Court.

14.     Venue is proper in this District under 28 U.S.C. §1391(e)(1) because the events or omissions giving rise to this action occurred and continue to occur in this District.

### III.     PARTIES

15.     Plaintiff Raymond Lamar Brown is currently in the custody of the Cumberland County Department of Corrections at the Cumberland Jail where he is at risk of death or serious injury if exposed to COVID-19. He is being held in pretrial custody and is presumed innocent.

16.     Plaintiff John Clark is currently in the custody of the Cumberland County Department of Corrections at the Cumberland Jail where he is at risk of death or serious injury if exposed to COVID-19. He is being held in pretrial custody and is presumed innocent.

17.     Plaintiff Desmond Rodgers is currently in the custody of the Cumberland County Department of Corrections at the Cumberland Jail where he is at risk of death or serious injury if exposed to COVID-19. He is being held in pretrial custody and is presumed innocent.

18.     Plaintiff Todd Ford, Jr. is currently in the custody of the Cumberland County Department of Corrections at the Cumberland Jail where he is at risk of death or serious injury if exposed to COVID-19. He is being held in pretrial custody and is presumed innocent.

19.     Plaintiffs also file this action on behalf of those similarly situated in the Jail.

20.     For all times relevant, Defendant Charles Warren was the Deputy Warden of the Cumberland Jail. Defendant Warren is a citizen of the State of New Jersey and an employee of the County of Cumberland. At all times relevant herein Defendant Warren was acting under color of

5

State law. Defendant Warren at all times relevant had the authority to and did act in concert with former Warden Smith in developing, implementing and carrying out policies and procedures for the Jail and in failing to develop, implement or carry out policies designed to protect the health and safety of inmates incarcerated in the Cumberland County Jail from risk of infection of COVID-19.

21.     John Doe is named as the Acting Warden of the Cumberland Jail.

## IV.    STATEMENT OF BACKGROUND FACTS

### THE COVID-19 PANDEMIC

22.     COVID-19 is a highly infectious disease and potentially deadly disease caused by the newly discovered SARS-CoV-2 virus. The world is in the midst of a global COVID-19 pandemic.

23.     The first known case of COVID-19 was reported in the United States on January 21, 2020.

24.     The COVID-19 virus spreads primarily through droplets of saliva or discharge from the nose which are inhaled or transferred from surfaces. The Centers for Disease Control and Prevention ("CDC") confirms that people who are asymptomatic can unknowingly transmit the virus, making its spread particularly difficult to slow.

25.     People infected with COVID-19 suffer from a wide range of symptoms, including fever, cough, difficulty in breathing, sore throat, congestion nausea, vomiting, diarrhea, fatigue, loss of taste and smell and muscle aches.

26.     All people, regardless of age or health, risk serious illness and death from COVID-19. Certain categories of people face especially high risks of serious illness or death from COVID-19.

27.     As of January 3, 2021, the World Health Organization ("WHO") reported about 83.3 million confirmed cases and about 1.8 million confirmed deaths globally, since March 2020.

28.     The CDC estimates that as of January 20, 2021 in the United States there have been about 24.2 million confirmed cases and over 400,000 confirmed deaths.

29.     There is no cure for COVID-19. While vaccines have recently become available in limited supply, complicated logistics have resulted in slower rollout than expected and inmate populations in New Jersey have not been given any priority.

30.     CDC recommendations for control of the spread of COVID-19 include: COVID-19 testing; wearing appropriate personal protective equipment, including a mask, or other protective face covering; practicing "social distancing"; avoiding congregating in groups; regular hand washing and use of hand sanitizer; disinfecting frequently touched surfaces; quarantining following known exposures; seeking prompt medical attention if symptoms develop, and self-isolating until all symptoms are resolved and/or receive a negative test.

## CUMBERLAND JAIL IS PARTICULARLY SUSCEPTIBLE TO THE SPREAD OF COVID-19

31.     The Cumberland Jail houses 260 inmates living in close quarters, and is currently at or near full capacity. With certain exceptions, inmates are confined in Cumberland Jail in cell units known as "pods" housing 32 inmates, with two inmates in each cell, and in dormitory quarters, housing twenty inmates sharing the single dormitory space.

32.     Plaintiffs and others similarly situated are highly susceptible to rapid person-to-person transmission of the virus because cramped conditions place residents and staff in close proximity.

33. Once the first known case of COVID-19 was reported in the United States in January 2020, Defendants were on notice that COVID-19 was a real threat to the United States of America and that it would likely spread to vulnerable communities including correctional facilities.

34. In addition to new inmates moving into the facility and into the inmate population, numerous other people, including correctional officers and other staff and contractors regularly move in and out of Cumberland Jail. As a result, there is an ever-present risk that new carriers will bring the virus into the facility.

35. Given their confinement, Plaintiffs do not have independent means to voluntarily comply with CDC recommendations, and are dependent upon Defendants to provide the necessary and appropriate testing, personal protective equipment, supplies and medical care necessary to contain the spread of COVID-19. Rather, they are wards of the State and the State has a duty to care for them—a duty which the State has failed miserably and repeatedly.

36. As a matter of Cumberland Jail procedure, any request made by an inmate for any purpose is required to be submitted in writing on an Administrative Remedy Form. To make a request, the inmate is required to place a completed form in a box for delivery by the correctional officer for consideration by Defendants. Once considered, Cumberland Jail procedures provide that the inmate will receive a written response.

37. The request form has no carbon copy or other duplicate and the inmates have no ability or access to equipment to copy or duplicate the request form once completed, but before it is submitted. Given this procedure, there is no record of the request, no means to establish chain of custody, and no means to ensure that he request was actually delivered and not discarded or destroyed unless the inmate receives the required written response.

**DEFENDANTS HAVE REFUSED TO PROVIDE ADEQUATE COVID-19 TESTING**

38.     Since January 2020, numerous inmates in custody in the Cumberland Jail have contracted COVID-19 and numerous inmates have exhibited symptoms of COVID-19, including coughing, fatigue, and shortness of breath, but have not been tested.

39.     From January 2020 and to date, Defendants repeatedly and publicly misrepresented that COVID-19 has not spread through the Cumberland Jail and that all CDC COVID-19 prevention recommendations have been followed. In fact, Defendants have not carried out any plan for regular testing, do not require that new entry inmates be tested for COVID-19 before entering the general population, have failed and refused to provided testing to inmates with known exposure to COVID-19, and do not provide testing to individuals required to quarantine after an exposure before returning to general population.

40.     Defendants have repeatedly made false public statements concerning low rates of positive testing results amongst the inmate population and have consistently misrepresented the widespread outbreaks of COVID-19 in Cumberland Jail. Contrary to Defendants' public representations, the low rate of reported infection does not reflect the results of testing, but only the fact that Cumberland Jail has offered limited to no testing to the inmates.  For example, as of May 12, 2020, Cumberland Jail reported that "no inmates have tested positive" and as of late October 2020, two inmates had tested positive.

41.     Despite having the means and ability to provide testing, Defendants have refused to routinely test inmates who present with symptoms or those who come in contact with another inmate, correctional officer or other staff with symptoms or who have tested positive for COVID-19.

42.     Defendants also do not provide testing for correctional officers working inside Cumberland Jail, and, as a consequence, officers who have become infected, but who may or may

not have been symptomatic, likely have transmitted COVID-19 to inmates living in the units where the officers are assigned to work.

43.     Commencing in March 2020, when an inmate housed in Unit D Pod with Plaintiffs contracted and became very ill with COVID-19, Plaintiffs have each requested COVID-19 testing, in writing, on multiple occasions, in accordance with the aforesaid procedure after known exposures to inmates and correctional officers who tested positive for COVID-19 and/or who exhibited symptoms.

44.     As to each such request, Defendants have either denied the request, without reasonable explanation, or have completely disregarded and not responded in any way to the requests for testing.

45.     In or about October 2020, Defendants informed the Cumberland Jail inmate population that Cumberland Jail was instituting a program of regular COVID-19 testing. Although inmates were tested at that time, and since that time, no testing has been provided either on a regular basis, in response to known cases of COVID-19 in the inmate population and amongst the correctional officers staffing Cumberland Jail, or in response to individual requests from inmates for testing.

46.     In November 2020, a correctional officer went out on leave for COVID-19, but Defendants did not inform inmates of the reason the officer was on leave, did not inform inmates that they had been exposed to the virus, did not quarantine inmates who had been in close contact with the officer and did not test any inmate for COVID-19. The inmates only learned that the officer had tested positive after he returned to work and informed them. Upon learning of this exposure, Plaintiffs and other inmates requested COVID-19 tests in writing, but none received a response to his request, and no one received a COVID-19 test.

47.     Defendants have also refused to provide inmates with their medical records and results of COVID-19 testing.  Defendants have told inmates who were tested that they were negative for the virus, but have refused to provide these inmates with access to their test results.

48.     As a consequence of their continuous, knowing and intentional actions and inactions, Defendants, with no rational reason and with deliberate indifference to the substantial risk of danger of the spread of COVID-19 infection and Plaintiffs' health and safety, have denied Plaintiffs the means to protect themselves and others from the spread of COVID-19.

## PLAINTIFFS ARE NOT PROVIDED WITH ADEQUATE PERSONAL PROTECTIVE EQUIPMENT, INCLUDING MASKS

49.     For many months after the first known COVID-19 infection at Cumberland Jail, Defendants refused to provide Plaintiffs and residents with any masks or any other personal protective equipment, and when masks were finally provided, they were disposable paper masks. Contrary to Defendants' public statements, inmates were not provided with N95 masks. Defendants' public statements were made with the intent to conceal actual conditions within the Jail.

50.     The paper masks provided to inmates are designed for limited use, but Plaintiffs and the other inmates are provided with a single mask, without replacement, for weeks. As a consequence, the masks become worn, tattered and torn, and essentially useless for the intended personal protection purpose.

51.     Recently, inmates were told that new masks would be distributed every two weeks, but masks are not distributed on an as needed basis.

52.     Each of the Plaintiffs has requested replacement masks for worn and torn face masks, but requests have gone unanswered or ignored, and Defendants, with no rational reason and with deliberate indifference to the inmates' health and safety repeatedly, throughout the

pandemic, have failed and refused to supply inmates with adequate face masks to limit the substantial risk of the spread of COVID-19.

53.     Many inmates do not wear masks in common areas, and Defendants, with no rational reason and with deliberate indifference to the inmates' health and safety repeatedly, throughout the pandemic, have not developed or enforced adequate policies and procedures to mandate that masks are worn to limit the substantial risk of the spread of COVID-19.

## DEFENDANTS HAVE NOT PROVIDED ADEQUATE HAND SANITIZER OR CLEANING SUPPLIES

54.     In deliberate disregard of CDC guidelines, for months, Defendants provided no access to hand sanitizer and denied residents' requests to use hand sanitizer, and inmates only now have limited access to hand sanitizer when a dispenser is available on the correctional officer's desk in the cell unit.

55.     Defendants do not clean or sanitize—and certainly do not properly clean or sanitize the Cumberland Jail facility and deny inmates adequate cleaning supplies for them to clean and disinfect their living areas.

56.     Cumberland Jail inmates are responsible for cleaning their own cells and the common area in the cell Unit in which they are housed. Inmates are not provided with masks, gloves, or other equipment that would allow them to protect themselves from infection while cleaning.

57.     Defendants do not provide inmates with adequate cleaning supplies to clean and disinfect their areas.

58.     Defendants did not disinfect Cumberland Jail for many months while the virus surged. Only recently Defendants have contracted for the service of a third-party vendor on a not more than monthly basis to spray disinfect the facilities.

59. Plaintiffs have requested access to sanitizers and have requested adequate cleaning supplies to clean and disinfect their cells, but Defendants, with no rational reason and with deliberate indifference to the substantial risk to inmates' health and safety repeatedly, throughout the pandemic, have denied and/or ignored these requests.

**DEFENDANTS HAVE FAILED TO IMPLEMENT SOCIAL DISTANCING POLICIES**

60. Defendants, with no rational reason and with deliberate indifference to the substantial risk to Plaintiffs' health and safety have not implemented the required social distancing policies, and in fact, have encouraged actions that run directly counter to social distancing protocols.

61. Residents regularly congregate, and interact freely, in the unit common space where no social distancing is enforced. Even inmates who voluntarily seek to avoid close contact with others are forced to break social distancing rules in order to utilize common areas and engage in activities required by Defendants.

62. Even though it is widely acknowledged that the risk of transmission of COVID-19 is significantly reduced outdoors, Defendants with no rational reason and with deliberate indifference to the substantial risk to Plaintiffs' health and safety, repeatedly and continuously denied Plaintiffs access to outdoor recreation from in or about March 2020, to date with a limited exception that a few days were permitted in January 2021.

63. Cell units in Cumberland Jail share the ventilation system that circulates air from one unit to another, including units where inmates suspected to have COVID-19 are quarantined.

64. Plaintiffs have complained to correctional officers about the ventilation issue, but Defendants, with no rational reason and with deliberate indifference to the substantial risk to the inmates' health and safety repeatedly, throughout the pandemic, have refused to take reasonable

13

and adequate action to prevent the spread of COVID-19, including changing the area where quarantined inmates are housed to reduce exposure through the vents.

## V. CLASS ALLEGATIONS

65. Pursuant to Federal Rule of Civil Procedure 23(b)(1) and 23(b)(2), Plaintiffs bring this action as a class consisting of all persons confined or to be confined in the Cumberland County Department of Corrections ("CCDOC"), including as subclasses: (i) persons confined pre-trials, and (ii) persons confined pursuant to a judgment of conviction. Plaintiffs reserve the right to amend the class definition or establish sub-classes as appropriate if discovery or further investigation reveals the class should be expanded or otherwise modified.

66. Numerosity: The class is so numerous that joinder is impracticable. Based upon information and belief, the size of the class is approximately 260 people and is therefore so numerous that joinder is inherently impracticable for that reason alone. Joinder is also inherently impracticable. For other, independent reasons, the class includes unnamed, future class members who cannot by definition be joined. Further, proposed class members are highly unlikely to file individual suits on their own, as all are incarcerated and many are indigent, and thus have limited access to their retained or court-appointed counsel due to Defendants' policies, are currently incarcerated, fear retaliation from filing suits against Defendants, and lack access and financial resources to obtain qualified Counsel to bring such suits.

67. Commonality: The claims of the class share common issues of fact and laws, including but not limited to whether Defendants' policies regarding health and hygiene as relevant to the COVID-19 pandemic—policies regarding health and that systemically affect all proposed class members—violate the Fifth, Fourteenth and Eighth Amendments to the United States Constitution, as well as Article I of the New Jersey Constitution. The resolution of this question will drive the outcome of the litigation.

68.     Typicality: The claims of Plaintiffs are typical of those of the class as a whole, because each Plaintiff is currently in Defendants' custody and Plaintiffs' claims arise from the same policies and procedures (or lack thereof) that provide the basis for all proposed class members claims.

69.     Adequacy: Plaintiffs are adequate class representatives who meet all of the requirements of Rule 23(a)(4). They have no conflicts of interest in this case with other class members. They will fairly and adequately represent the interest of the class, and each understands the responsibilities of a representative moving forward. Plaintiffs will vigorously prosecute the interests of the class.

## VI.     CAUSES OF ACTION

### COUNT I

#### (United States Constitution – Fifth Amendment)

70.     The allegations contained in paragraphs 1-69 are incorporated as if set forth fully at length herein.

71.     Even as COVID-19 spreads through Cumberland Jail, Plaintiffs and proposed class members retain their constitutional rights, including their rights under the Fifth  Amendments to the United States Constitution which guarantee pretrial detainees the right to be free from punitive conditions of confinement, risk from substantial risk of danger to health and safety within the Jail, and cruel and unusual punishment.

72.     The conditions of Plaintiffs' and the proposed class members' confinement have exposed, and continue to expose, them to a current and ongoing substantial risk of serious and substantial damage to their health.

73.     Defendants know and have known about the risks of COVID-19 to Plaintiffs and proposed class members.

74.     The conditions of confinement place Plaintiffs and the proposed class members at an increased risk of contracting COVID-19, for which there is no known cure.

75.     Defendants have the power and responsibility to develop, undertake, implement and otherwise carry-out policies and measures to protect inmates, correctional officers, and other staff from harm from the COVID-19 virus pandemic and ensure their health and safety.

76.     Defendants, who are aware of the extraordinary risk and high level of transmission of the COVID-19 virus, have knowingly failed and refused to implement and/or carry out policies and procedures to protect the inmates which include among other things, routine COVID-19 testing, contact tracing, quarantine areas, isolation areas, physical distancing, cleaning, provision of masks and personal protective equipment and medical care.

77.     Defendants' failures are not related to any legitimate governmental objective, were taken with deliberate indifference, and violate the Due Process rights of the inmates.

78.     As a result of Defendants' unconstitutional actions, Plaintiffs and the proposed class have been harmed and are suffering irreparable injury and remain at a substantial risk of serious harm in the future.

## COUNT II

### (United States Constitution-Eighth Amendment)

79.     The allegations contained in paragraphs 1-78 are incorporated as if set forth fully at length herein.

80.     Plaintiffs and proposed class members retain their constitutional rights, including their rights guaranteed under the Eighth Amendments to the United States Constitution which guarantee pretrial detainees the right to be free from punitive conditions of confinement, risk from substantial risk of danger to health and safety within the Jail, and cruel and unusual punishment.

81. Defendants have acted with deliberate indifference in failing to mitigate the risk of the spread of COVID-19 to Plaintiffs and proposed class members.

82. Defendants' deliberate indifference to the risks faced by inmates in their custody, despite knowledge of the harm and what it would take to correct it, has subjected the inmates to cruel and unusual punishment in violation the Eighth Amendment to the United States Constitution.

83. As a result of Defendants' unconstitutional actions, Plaintiffs and the proposed class have been harmed and are suffering irreparable injury and remain at a substantial risk of serious harm in the future.

## COUNT III

### (New Jersey Constitution Article I)

84. The allegations contained in paragraphs 1-83 are incorporated as if set forth fully at length herein.

85. Article I, paragraph 12 of the New Jersey Constitution affords Plaintiff inmates the right to free from cruel and unusual punishment.

86. New Jersey accords a high priority to the preservation of health.

87. Under the New Jersey Constitution, prison officials have an absolute duty to provide medical care during a term of imprisonment.

88. Defendants' conduct as aforesaid violates Plaintiffs' State Constitutional rights.

89. As a result of Defendants' unconstitutional actions, Plaintiffs and the proposed class have been harmed and are suffering irreparable injury and remain at a substantial risk of serious harm in the future.

**WHEREFORE**, Plaintiffs and proposed class members respectfully request that the Court:

A.      Certify the proposed class;

B.      Declare Defendants in violation of the United States Constitution and the New Jersey Constitution;

C.      Appoint an independent monitor with unfettered access to cell and dormitory units, common areas, medical units, quarantine units, confidential communication with detained individuals in and out of quarantine, confidential communication with correctional officers and Cumberland Jail staff, and surveillance of public areas of the facility and require the monitor to report on conditions within Cumberland Jail and make recommendations to the Court consistent with CDC guidance on best practices to prevent the spread of COVID-19;

D.      Enter a temporary restraining order, preliminary injunction, and permanent injunction requiring Defendants to:

1.      Provide every inmate with an N95 mask and provide access to replacement masks on both a regular and as needed basis;

2.      Provide every inmate who requires other or additional personal protective equipment with such equipment, including face shields;

3.      Require each inmate to wear a mask or at all times when in a common area;

4.      Require that all correctional officers and other staff wear personal protective equipment, including masks and gloves, when interacting with inmates, other staff or individuals having access to the Cumberland Jail;

5.      Implement measures to permit physical distancing;

6.      Provide each inmate, without cost, an individual supply of hand soap, sufficient to allow frequent hand washing; paper towels; toilet paper;

running water; and facial tissue and access to hand sanitizer containing at least 60% alcohol;

7.    Provide adequate cleaning supplies;

8.    Conduct immediate COVID-19 testing for all inmates and staff, including correctional officers, and, on an ongoing basis, conduct COVID-19 testing of anyone displaying known symptoms of COVID-19 and/or who has come in contact with anyone testing positive for COVID-19;

9.    Ensure that individuals identified as having COVID-19 or having been exposed to COVID-19 are properly quarantined in a non-punitive setting, with continued access to showers, recreation, mental health services, reading materials, commissary, phone and video visitation with loved ones, communication with counsel, and personal property; and

10.   Provide proper nutrition.

E.    Award attorney's fees, costs and expenses, and such further relief as this Court deems appropriate.

Dated: January 29, 2021          /s/ Karen A. Confoy
New Jersey                       Karen A. Confoy
                                 Jeffrey M. Pollock
                                 Paul W. Kalish
                                 **FOX ROTHSCHILD LLP**
                                 Princeton Pike Corporate Center
                                 997 Lenox Drive
                                 Lawrenceville, NJ 08648
                                 (609) 844-3033
                                 kconfoy@foxrothschild.com
                                 jmpollock@foxrothschild.com
                                 pkalish@foxrothschild.com
                                 *Attorneys for Plaintiffs Raymond Lamar*
                                 *Brown, John Clark, Desmond Rodgers and*

Camden, N.J. 08101

4th and Cooper Streets

District Court

Noel L. Hillman

RECEIVED
The Sep 29 2021
WILLIAM T. WALSH
CLERK
AT 8:30 M

Case No.

J.L. Clark #42592
54 W mound st
Bridgeton N.J. 08302

FOREVER USA PURPLE HEART
FOREVER USA PURPLE HEART